# Exhibit G

# PURCHASE AND SALE AGREEMENT

This 28th day of August 2019

1. **Parties and Mailing Addresses.** John S. Jones of 19 Calder Street, Dorchester, Massachusetts 02124, hereinafter called SELLER, agrees to SELL and Maria Pearce of 81 Patricks Run, Stoughton, Massachusetts 02072, and John Clekley and BUYER OR PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: 19 Calder Street, Dorchester, Massachusetts 02124.

2. **Description.** A certain parcel of land, with all buildings, structures, improvements, and fixtures thereon or attached thereto or used in connection with said premises known as 19 Calder Street, Dorchester, Massachusetts and more particularly describes in a Deed recorded with the Suffolk County Registry of Deeds in Book 18105, Page 186.

3. **Buildings, Structures, Improvements, Fixtures.** Included in the sale as a part of said premises are the buildings, structures and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, and, ONLY IF BUILT IN, refrigerators, air conditioning equipment, ventilators, dishwashers, washing machines and dryers; and

   but excluding: None

4. **Title Deed.** Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except:

   (a) Provisions of existing building and zoning laws;
   (b) Any liens or municipal betterment assessments, if any, which are assessed after the date of this Agreement;
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d) Federal, State and local laws, ordinances, bylaws, rules and regulations regulating the use of land, including building codes, zoning bylaws, health and environmental laws;
   (e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises;
   (g) Existing rights and obligations in party walls which are not the subject of written agreement;

Page 1 of 12

(h) Utility easements of adjoining ways; and
(i) Matters that would be disclosed by an accurate survey of the Premises.

5. **Plans.** If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **Registered Title.** INTENTIONALLY OMITTED.

7. **Purchase Price.** The agreed purchase price for said premises is SIX HUNDRED SIXTY THOUSAND AND 00/100 U.S. DOLLARS ~~($650,000.00)~~ 660,000 of which

| | | |
|---|---|---|
| $ | 1,000.00 | have been paid as a deposit; |
| $ | 9,000.00 | is to be paid at the signing of this agreement; and |
| $ | 650,000.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's, or bank check(s) or by wire. |
| $ | 660,000.00 | TOTAL |

8. **Time For Performance; Delivery Of Deed.** Such deed is to be delivered at 12:00 PM (noon) on or before the 15th day of November 2019, but no later than 14 days after the EFFECTIVE DATE (defined in Clause 49 herein), unless otherwise agreed to in writing by the parties, at the Suffolk County Registry of Deeds or Lender's counsel's office (provided such lender's counsel is located in Massachusetts), unless otherwise agreed upon in writing.

9. **Possession And Condition Of Premise.** Full possession of said premises free of all tenants and occupants, except as herein provided, and of all personal property, except property included in the sale or tenants permitted to remain, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they were at the time of the BUYER's inspection, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled personally to inspect, said premises within 48 hours prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. **Extension To Perfect Title Or Make Premises Conform.** If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of not longer than thirty (30) days or one business day prior to the expiration of the BUYER's initial rate mortgage loan commitment, which ever date occurs first.

Notwithstanding the above, this paragraph shall be construed to apply to matters affecting title, the physical condition of the Premises and compliance of the Premises with



Page 2 of 12

municipal, county, state or federal codes, ordinances, statutes or regulations concerning the Premises and to which the Premises are subject under the terms of this Agreement. This paragraph shall not, however, be construed to waive any of the requirements as may be ordered by the Bankruptcy Court as stated in paragraphs 49 and 50 and shall be subject to and governed by paragraphs 49 and 50 herein.

11. <u>Failure To Perfect Title Or Make Premises Conform, Etc.</u>. If at the expiration of the original or extended time, or the time as set by the Bankruptcy Court in compliance with paragraphs 49 and 50 herein, the SELLER shall have failed so to remove any defects in title, deliver possession or make the premises conform, as the case may be, all as herein agreed, or if at the Closing said premises do not conform with the provisions hereof, BUYER shall have the option, exercisable by written notice to SELLER prior to the Closing, to either (a) have all payments made hereunder forthwith refunded to BUYER and all other obligations of the parties hereto cease and this Agreement to become void without recourse to the parties hereto or (b) proceed with this Agreement and accept a deed to said premises subject to any defects in title or any other failure to comply with the provisions of this Agreement. Notwithstanding the above, this paragraph shall be subject to and governed by paragraphs 49 and 50 herein.

12. <u>Buyer's Election To Accept Title</u>. The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either:

   (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration; or

   (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

   (c) Notwithstanding anything herein contained to the contrary, in the event of the substantial (herein defined as any amount $10,000.00 or higher) damage or destruction of or to the Premises by fire, vandalism or other casualty and cannot be restored prior to closing or in the event of a taking of all or part of the premises or material access thereto by eminent domain, during the term of this Agreement or up to the time of closing, then at the option of Buyer, this Agreement may be terminated without legal or equitable recourse to either party, the parties thereby releasing each other from all liability under this Agreement and all deposits made hereunder shall be

returned to the Buyer provided however that the Buyer shall have delivered to the Seller notice in writing of its intention to so terminate.

13. **Acceptance Of Deed.** The acceptance and recording of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

14. **Use Of Money To Clear Title.** To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed.

15. **Insurance.** Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a) Fire and Extended Coverage | $ As presently insured |
| (b) | $ |

Until the delivery of the Deed, the SELLER shall maintain any supplemental insurance now in effect covering the Unit itself and any fixtures therein. All risk of loss to remain with Seller until the Deed is recorded.

16. **Adjustments.** Taxes for the then current fiscal year shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed.

17. **Adjustment Of Unassessed And Abated Taxes.** If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

18. **Broker's Fee.** A Broker's fee of five percent (5%) for professional services is due from SELLER to the broker, Homes Unlimited LLC if, as, and when the title passes and BUYER accepts and records a deed.

19. **Broker's Warranty.** The Broker(s) named herein warrant(s) that the Broker(s) is/are duly licensed as such by the Commonwealth of Massachusetts.

Page 4 of 12

20. **Brokers.** BUYER and SELLER represent to each other that neither party has dealt with any broker or any other person in connection with this purchase of said premises hereunder other than Homes Unlimited LLC, the broker named herein ("BROKER"), to whom SELLER agrees to pay any commission due pursuant to the provisions of Clause 18. BROKER represents to SELLER that BROKER knows of no one else entitled to a fee or commission on the sale hereunder. BUYER, BROKER and SELLER agree that each will hold harmless and indemnify the others from any loss, cost, damage and expense, including reasonable attorney's fees, incurred by BUYER or SELLER for a commission or finder's fee as a result of the falseness of these representations. BUYER's broker, if other than as stated herein, shall look to Homes Unlimited LLC for any commission they seek related to this transaction. The provisions of this Clause shall survive the Closing.

21. **Broker As Party:** The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

22. **Deposit.** All deposits made hereunder shall be held in escrow by Homes Unlimited LLC as escrow agent, subject to the terms of this Agreement and shall be duly accounted for at the time for performance hereof. All such deposits shall be held in a federally insured interest bearing account. In the event of any disagreement between the parties, the escrow agent may retain all deposits made under this agreement pending instructions mutually given by the SELLER and the BUYER.

23. **Buyer's Default; Damages.** The parties acknowledge that Seller has no adequate remedy at law in the event of Buyer's failure to fulfill its obligation hereunder because it is impossible to compute exactly the damages which would accrue to the Seller in such event. The parties have therefore taken these facts into account in setting the amount of the Deposit and hereby agree that: (i) the Deposit is the best estimate of such damages which would accrue to Seller; (ii) the Deposit represents damages and not any penalty against Buyer; and (iii) if Buyer shall fail to fulfill Buyer's obligations hereunder, the Deposit shall be retained by Seller as its full and liquidated damages in lieu of all other rights and remedies which Seller may have against Buyer at law or in equity for such failure. This shall be the SELLER's sole remedy in equity or at law.

24. **Release By Spouse/Partner.** Intentionally Omitted.

25. **Seller's Warranties And Representations.** SELLER makes no warranties to BUYER and BUYER understands and agrees that the property is being sold "as is." The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has BUYER relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except the following additional representations, if any, made either by the SELLER of the BROKER:

    (a) The SELLER has full right, power and authority to enter into and become bound by this Agreement and to consummate the transactions contemplated hereby; that any person



Page 5 of 12

other than the SELLER executing this Agreement has been duly authorized by all necessary action and has full right, power and authority to execute and deliver this Agreement on behalf of the SELLER.

(b) SELLER represents that SELLER is not aware of any unresolved litigation or pending or ongoing regulatory hearings or actions which could affect said premises other than the Bankruptcy in the matter of the SELLER, John S. Jones, Chapter 13, Case No. 18-14582-FJB, and SELLER agrees to keep BUYER informed, by notice given pursuant to this Agreement, of any such litigation, hearings or actions, whether scheduled, anticipated, or in progress.

(c) SELLER warrants that SELLER owns the personal property described in Paragraph 3 above free of any lien or encumbrance.

(d) No consent of any third party is required, other than the Bankruptcy Court in the matter of the SELLER, John S. Jones, Chapter 13, Case No. 18-14582-FJB, for Seller to perform its obligations hereunder. SELLER is not a "foreign person" within the meaning of Sections 1445 or 7701 of the Internal Revenue Code of 1986, as amended.

The representations made in this Clause are subject to and contingent upon the receipt of approval for this sale by the Bankruptcy Court in the matter of John S. Jones, Chapter 13, Case No. 18-14582-FJB.

26. Financing/Mortgage Contingency Clause  In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $627,250.00 at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a firm, written commitment for such loan containing only conditions within the reasonable control of the Buyer cannot be obtained on or before September 23, 2019, the BUYER may terminate this agreement by written notice to the SELLER prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before September 7, 2019. The BUYER is not deemed to have received a loan commitment hereunder unless it is received in writing and free from any conditions or contingencies beyond the BUYER's reasonable control. Due diligence on the part of the BUYER as stated herein shall mean that the BUYER need only apply to one (1) lending institution.

The ability of the BUYER to secure financing, as a condition of this Agreement, shall not be contingent upon the sale or closing of any other real estate.

27. Conditions of Purchase.  It shall also be a condition of BUYER's obligation to purchase said premises that at the Closing:

(a) Said premises are served by a municipal sewer system, or, if not, the septic system for said premises lies wholly within the boundaries of said premises and complies with Title V of the Massachusetts Environment Code, or if not, by a private well, and that the quantity and quality of the water furnished thereby is adequate to serve a single family residence;

(b) BUYER can obtain an owner's policy of insurance insuring title to said premises in BUYER, free from encumbrances except as set forth in Clause 4 of this Agreement and for standard exceptions and other exceptions, including but not limited to takings, assessments and orders, as are routinely taken in ALTA Owner's policies, issued by a title insurance company qualified to do business in Massachusetts.

28. **REBA Standards**. Any matter or practice arising under or relating to this Agreement which is the subject of a title standard or a practice standard of the Massachusetts Real Estate Bar Association (REBA) in effect on the date of this Agreement shall be covered by such title standard or practice standard to the extent applicable.

29. **Closing Documents**. At the time of the delivery of the deed hereunder, the SELLER shall execute and deliver to the BUYER such customary instruments as the BUYER's mortgagee and title insurance company may reasonably require. The BUYER also agrees to execute any document reasonably required by the Bankruptcy Court in the matter of John S. Jones, Chapter 13, Case No. 18-14582-FJB to complete this sale to the BUYER.

30. **Maintenance of Premises**. Between the date hereof and the Closing SELLERS shall maintain and service said premises and its appurtenances at the same or greater level of effort and expense as SELLERS have maintained or serviced said premises for SELLERS' own account prior to this Agreement.

31. **Keys and Security Systems**. SELLER shall deliver to BUYER, at the Closing, keys for all existing locks to all buildings on said Premises, openers for all automatic garage doors, if any, and all necessary security codes for alarm systems on said premises, if any.

32. **Notice**. Whenever, by the terms of this Agreement, notice shall or may be given either to BUYER or to SELLER, such notice shall be deemed to have been given only if in writing and either delivered by hand or sent by registered or certified mail, postage prepaid, overnight mail (by recognized overnight courier) or via fax transmission (with fax confirmation) and/or electronic mail to either party or their agents or attorneys, if intended for the SELLER to:

Richard A. Mestone, Esq.
MESTONE & ASSOCIATES LLC
65 Flagship Drive, Suite A
North Andover, MA 01845
Tel: (617) 381-6700
Fax: (978) 655-4069
email: richard.mestone@mestonehogan.com

Page 7 of 12

And if intended for the BUYER to the BUYER to:

_____, Esq.
_____
_____

Tel: _____
Fax:
email:

or to such other address or addresses as may be specified by either party to the other by like notice. All notices shall be effective when delivered by hand, deposited in the mail within the continental United States, deposited with an overnight courier, or when faxed (with fax confirmation) and/or electronic mail to either party or their agents or attorneys, as the case may be.

In the event that the date for the Closing, or the date that any notice required pursuant to this Agreement is due, falls on a Saturday, Sunday, or legal holiday, the Closing, or the due date of such Notice, shall be the next business day.

33. **Inspection.** This Agreement is subject to the BUYER obtaining, at the BUYER's sole expense, home and real property inspections, including radon, well water, lead paint, termite and septic inspections, by consultants of the BUYER's choosing on or before August 29, 2019. If the BUYER is not satisfied with the results of such inspections, this Agreement may be terminated by the BUYER by notifying the SELLER and Broker, if any, in writing, on or before 5:00 p.m. on August 30, 2019, and the deposit will be returned to the BUYER. Said notification shall include a list of the items of dissatisfaction on the part of the BUYER from the results of the home and real property inspections. The BUYER shall be deemed to have waived his rights under this paragraph if the SELLER and/or Broker or SELLER's Attorney, if any, have not been notified in writing, as stated herein, that the BUYER is not satisfied with the results of the home and real property inspections.

34. **Form of Agreement.** This Agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transaction contemplated hereby shall be null and void.

35. **Construction Of Agreement.** This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER



their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent or the parties to it.

36. <u>Lead Paint Acknowledgement</u>. The parties acknowledge that, under Massachusetts General Laws, Chapter 111, Section 197, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. It is agreed that the Buyer shall assume responsibility for compliance with said law and hereby releases Seller from any liability for claims relating to the Massachusetts Lead Paint Law.

37. <u>Smoke/Carbon Monoxide Detectors</u>. The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke/carbon monoxide detectors in conformity with applicable law.

38. <u>Facsimile</u>. This Agreement may be executed by facsimile and said facsimile signature shall be treated as an original for all purposes.

39. <u>Counterparts</u>. This Agreement may be executed in counterparts, such as would exist if each party signed an original copy independent of the other, each of which, when taken together, shall constitute the entire agreement.

40. <u>Merger</u>. The acceptance of the Deed by Buyer or the grantee designated by Buyer, as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed.

41. <u>Severability</u>. The invalidity of any provision of this Agreement shall in no way affect the validity of any other provision.

42. <u>Agreement Not To Be Recorded</u>. If the BUYER records this Agreement or a copy hereof, this Agreement shall, at SELLER's option, terminate and all deposits hereunder shall be paid to the SELLER as liquidated damages.

43. <u>Successors and Assigns</u>. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their heirs, successors, personal representatives and assigns.

44. <u>When Agreement Is Binding</u>. This Agreement shall not be binding upon BUYER and no funds held as a deposit hereunder shall be negotiated until BUYER has received a copy of the Agreement fully executed by SELLER. BUYER may cancel this Agreement at any time prior to BUYER's receipt of a fully executed copy of this Agreement. For the purposes of this Agreement, facsimile transmission of the executed P&S and any Rider(s) shall suffice.



Page 9 of 12

45. **Environmental Notices.** To the best of their knowledge and belief, SELLER represents to BUYER that the SELLER has never received a notice of responsibility from the Department of Environmental Protection and that other than reasonable quantities of over-the-counter household and garden products, neither SELLER nor anyone else has ever generated, treated, stored, released, discarded or disposed of Hazardous Waste on the Premises. The provisions of this paragraph shall survive delivery of the deed.

46. **Miscellaneous Notices.** The SELLER has not received any written notice or written request from any insurance company or board of fire underwriters or Department of Environmental Protection (or any organization exercising functions similar thereto) requesting the performance of any work or alterations to the premises. The provisions of this paragraph shall survive delivery of the deed.

47. **No Mechanics' Lien.** Notwithstanding anything herein to the contrary the SELLER hereby warrants and represents that: a) as of the date of closing, there shall be no mechanics lien on record with respect to the subject Property; b) the SELLER has not ordered and has no knowledge of any work having been done within the last 120 days to the premises that would entitle anyone now or hereafter to claim a mechanic's or materialmen's lien on the Property; c) the SELLER does hereby agree to jointly and severally indemnify the BUYER and agree to hold BUYER harmless by reason of any loss, costs or damages, including attorneys' fees, which BUYER may sustain by any mechanics' or materialmen's lien arising and affecting the Property. In the event mechanic's or materialmen's liens do arise on the Property, the SELLER agrees to pay the same in full at or prior to closing or to post a bond sufficient in amount to cover these liens. The terms and provisions of this Clause shall survive delivery of the deed.

48. **Extension.** Notwithstanding anything to the contrary set forth in this Agreement, it is understood and agreed that accelerations, modifications, cancellations, amendments, and/or extensions of time for performance of the provisions of this Agreement may be executed in writing on behalf of a party by counsel thereof. BUYER and SELLER shall be able to rely upon the signatures of said attorneys as binding unless they have actual knowledge that the principals have disclaimed the authority granted herein to bind them.

49. **Effective Date/Notice:** Any notice, communication or document delivery requirements hereunder may be satisfied by providing the required notice, communication or documentation to the party or their licensee in accordance to the requirements as set forth in Clause 32 herein. This Agreement is a binding contract when signed and all changes initialed by both BUYER and SELLER. The EFFECTIVE DATE shall be the day on which the parties receive notice of the Bankruptcy Court's Order approving this sale. The use of days is intended to mean calendar days from the EFFECTIVE DATE of this Agreement. Deadlines in this Agreement, including all addenda, expressed as "within x days" shall be counted from the EFFECTIVE DATE, unless another starting date is expressly set forth, beginning with the first day after the EFFECTIVE DATE, or such other established starting date, and ending at 12:00 Midnight Eastern Time on the last day counted, unless otherwise expressly stated in this Agreement. Unless expressly stated to



Page 10 of 12

the contrary, deadlines in this Agreement, including all addenda, expressed as a specific date shall end at 12:00 Midnight Eastern Time on such date.

50. Additional Provisions.

1. <u>Bankruptcy Case</u>

(a) <u>Bankruptcy Court Approval</u>. This Agreement and the conveyance of the Premises are both subject to and contingent upon the review and approval of the United States Bankruptcy Court in the matter of John S. Jones, Chapter 13, Case No. 18-14582-FJB. The SELLER will seek and diligently pursue the approval of the Bankruptcy Court to sell the Premises, through established practice there, following the receipt by counsel of a fully executed Agreement. The SELLER will not be able to convey the Premises until the SELLER receives, in writing, the approval of the Bankruptcy Court authorizing the sale. The Closing Date will be extended, if necessary, in order to allow the Bankruptcy Court and/or Office of the United States Trustee time to review and approve the sale of the Premises. The SELLER shall notify the BUYER of the Court's, and/or Trustee's, action on the request for approval of the sale upon receipt of same. With the sole exceptions of: i) the price that the BUYER will pay for the Premises; and ii) that the SELLER shall not be required to expend any money other than from the proceeds received from the sale to pay monetary encumbrances and customary fees associated with the sale, the parties hereto agree that any conditions that the Court or Trustee imposes on the conveyance will become an amendment of this Agreement subject to satisfactory review and acceptance by the BUYER, such review and acceptance to be in a reasonable manner.

(b) <u>Sale Free and Clear of Liens</u>: The Order from the Bankruptcy Court shall state that the property will be sold free and clear of all liens, claims and encumbrances of both the Debtor and non-debtor spouse and that any perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable bankruptcy law.

(c) <u>BUYER Expenses</u>. Notwithstanding the terms and provisions contained in the P&S, Addendum thereto, and this Rider, the BUYER shall not be required to expend any funds (but may do so if BUYER so chooses) required while doing his due diligence until the EFFECTIVE DATE, which is defined herein.

(d) <u>Failure of the Bankruptcy Court to Approve Sale</u>. In the event that the contingency contained herein is not met, then any payments made under this Agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto; and under no circumstances shall the SELLER be obligated to pay any commission and/or fees to the Broker(s) referred to herein.

2. Seller Credit. The SELLER agrees to give the BUYER $10,000.00 toward closing costs.

Page 11 of 12

**FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"**

**NOTICE:** This is a legal document that creates binding obligations. If not understood, consult an attorney before signing. Failure to understand this document is not valid grounds for terminating this agreement or avoiding your responsibilities hereunder. Consult an interpreter, if necessary.

Buyer(s)
_____
John Cleekley

_____
Maria Pearce

Seller(s)
_____
John S. Jones

9-17-19